**AKERMAN SENTERFITT LLP**
DONALD M. SCOTTEN (SBN 190532)
Email: donald.scotten@akerman.com
IMRAN HAYAT (SBN 224458)
Email: imran.hayat@akerman.com
725 South Figueroa Street, 38th Floor
Los Angeles, California 90017-5433
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

**AKERMAN SENTERFITT LLP**
JUSTIN D. BALSER (SBN 213478)
Email: justin.balser@akerman.com
VICTORIA E. EDWARDS (SBN 269305)
Email: victoria.edwards@akerman.com
511 Sixteenth Street, Suite 420
Denver, Colorado 80202
Telephone: (303) 260-7712
Facsimile: (303) 260-7714

Attorneys for Defendants
AURORA LOAN SERVICES LLC and DEUTSCHE BANK
TRUST COMPANY AMERICAS, incorrectly named
as DEUTSCHE BANK NATIONAL TRUST COMPANY AMERICAS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| EDDIE YAU and GLORIA YAU, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY AMERICAS, and AURORA LOAN SERVICES LLC, Inclusive,<br><br>Defendants. | Case No. SACV11-00006-JVS (RNBx)<br>Assigned to the Hon. James V. Selna<br><br>**DECLARATION OF VICTORIA E. EDWARDS IN SUPPORT OPPOSITION TO PLAINTIFFS'** *EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER AS TO HOME SALES THIS WEEK, IMMEDIATE STAY IN ACTION 661690 FILED BY PLAINTIFF AND IN SUPPORT OF** *EX PARTE* **APPLICATION TO DISSOLVE STIPULATION (DOCKET NO. 10) and EXPEDITE the JANUARY 28 HEARING TO JANUARY 26, 2011**<br><br>Hearing Date:<br>Date: TBD<br>Time: TBD<br>Ctrm.: 10C<br><br>Complaint Filed: January 3, 2011<br>Trial Date: None |

{DN056612;1}                                    1                              CASE NO. MC020692
**DECLARATION OF VICTORIA E. EDWARDS**

# DECLARATION OF VICTORIA E. EDWARDS

I, Victoria E. Edwards, declare as follows:

1. I am an attorney licensed to practice in California, New York, Colorado and New Jersey, and am licensed to practice before this Court. I practice law as an associate in the law firm of Akerman Senterfitt LLP, which represents Aurora Loan Services LLC (**Aurora**) and Deutsche Bank Trust Company Americas, incorrectly named as Deutsche Bank National Trust Company Americas (**Deutsche Bank**) (collectively, **defendants**) in this action. This declaration is offered in support of Defendants' Ex Parte Application to Expedite Hearing Date on Their Motion to Strike Notices 1, 2, And 3 (Docket Nos. 12-14) and to Obtain Immediate Clarification On the Court's January 19, 2011 Order Issuing Order To Show Cause and Temporary Restraining Order.

2. The matters set forth herein are of my own personal knowledge and, if called as a witness, I could and would testify competently to them. I am fully familiar with this case and all pleadings filed herein, and have been involved in all aspects of this litigation.

3. On January 3, 2011, plaintiffs filed this purported class action lawsuit. (Docket No. 1.)

4. Also on January 3, 2011, plaintiffs filed an Ex Parte Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue in This Action (**TRO Application**), set for hearing on January 13, 2011.

5. While both the complaint and the TRO Application purport to bring allegations for alleged violations of the Making Homes Affordable (**HAMP**) program on behalf of all similarly-situated plaintiffs, **neither filing purported to enjoin any foreclosure sale other than the upcoming foreclosure sale of named class representatives, plaintiffs Eddie Yau and Gloria Yau**.

6. On January 4, 2011, plaintiffs' counsel gave defendants notice of the TRO Application. Attached as **Exhibit 1** is a true and correct copy of this notice. (Docket No. 3.)

7. On January 6, 2011, I made an appearance on behalf of defendants in this case.

8. Also on January 6, 2011, I contacted counsel for plaintiffs to discuss a possible resolution to this matter. Specifically, I offered, on behalf of Aurora, to postpone the foreclosure sale on the property of named plaintiffs, Eddie and Gloria Yau, in exchange for continuing the Yau's foreclosure sale to February 15, 2011. The extension would give Aurora time to determine whether the Yaus could qualify for a trial plan or modification, or both, under HAMP, thus negating the purpose for this lawsuit.

9. While plaintiffs' counsel was amenable to stipulating to a postponement of the sale and continuation of the *ex parte* hearing, plaintiffs' counsel insisted that the Stipulation include a blanket postponement of all foreclosure sales of unnamed future claimants.

10. During this same call, I explained to plaintiffs' counsel that Aurora could not agree to a blanket postponement of such sales. In particular, Aurora could not postpone such sales without first determining whether the future potential class claimant even qualified for or applied for HAMP, and whether it was denied. Also, there were other factors Aurora needed to consider with respect to the loans' investors before it could agree to postpone any sales.

11. I also explained to plaintiffs' counsel that she would need to call me to discuss any future postponements on a case-by-case basis because Aurora would need to determine whether a postponement was even feasible. For example, Aurora could not postpone a sale that already occurred, or that was scheduled to take place after the February 15, 2011 extension provided to the Yaus, per the Stipulation. Discussing these circumstances on a borrower-by-borrower basis would also allow Aurora to determine, for

privacy reasons, whether plaintiffs' counsel actually represented the potential plaintiff, so as to avoid improperly divulging privacy information.

12. As a compromise, plaintiffs' counsel and myself agreed to specify only the postponement of the Yau's foreclosure sale, and agreed that there would be no postponement of any future sale under the Stipulation absent proper notice to Aurora's counsel. The Stipulation specifically stated that "Aurora has not agreed to postpone any foreclosure sales of those plaintiffs not named but allegedly "similarly situated" absent proper notice to Aurora's counsel on behalf of those specifically-identified individuals." (Docket No. 10.) Pursuant to the Stipulation, any postponement of future sales would last only so long as the postponement granted to the Yaus (i.e., February 15, 2011), regardless of when the sale was scheduled to occur.

13. The parties did not define the phrase "proper notice" in the Stipulation. I had extensive phone conversations with plaintiffs' counsel on what constituted "proper notice." Counsel for plaintiffs sought clarification regarding this phrase.

14. I explained to plaintiffs' counsel that she could give "proper notice" by calling me to discuss her basis for seeking inclusion of a potential class claimant and the details of the upcoming sale. In particular, I informed opposing counsel that notice would include whether that particular defendant qualified for but was denied a HAMP plan. I also stated that "proper notice" would require, in all situations, filing *ex parte* papers with the Court to obtain an injunction.

15. While the parties discussed the definition of "proper notice," the parties never revised the Stipulation because plaintiffs' counsel stated she "was done" with drafting the Stipulation, and according to her, she was tired from staying up the previous night on vacation, and needed to get something to eat.

16. I opted not to include the discussed, specific language in the Stipulation based on plaintiffs' counsel word that she understood what proper notice meant. I have often relied on the word and good faith of counsel in confirming settlement arrangements or postponement agreements, and believed that plaintiffs' counsel would

1  act in good faith in seeking future postponements of foreclosure sales.

2     17.   The Court entered an order approving the Stipulation on January 10,
3  2011. (Docket No. 11.)

4     18.   On January 12, 2011, plaintiffs filed a purported "Notice No. 1
5  Identifying Potential Members of the Class to be Included in the Stip and Order
6  Continuing the TRO and Postponing Foreclosures." (Docket No. 12.) The purported
7  notice attached 131 pages from the county recorder's office of 25 counties. The "list"
8  consisted of publicly-recorded documents for thousands of properties of unnamed
9  borrowers, and is narrowed only by the reference to Aurora, Deutsche Bank, Quality
10 Loan Service Corp. (an entity Aurora uses to initiate foreclosure in California) and
11 Aurora Bank FSB, for which entity Aurora is a wholly-owned subsidiary. (Docket No.
12 12, Attachment A.) **Notice 1 contained no names of potential borrowers or**
13 **whether opposing counsel was authorized to represent them, and failed to note**
14 **whether the unnamed borrowers qualified for, but were rejected a HAMP loan**
15 **modification.**

16    19.   Counsel for plaintiffs did not talk with me, nor anyone from my firm, on
17 the phone before filing Notice 1 with the Court, as we agreed she would for purposes
18 of proper notice. Rather, plaintiffs' counsel sent me a fax cover sheet and e-mail
19 vaguely alleging she was giving notice of the filing. Attached as **Exhibit 2** are true and
20 correct copies of this correspondence.

21    20.   On January 14, 2011, plaintiffs filed a purported "Notice 2 Identifying
22 Potential Members of The Class to be Included in the Stipulation and Order Continuing
23 the Ex Parte Hearing for Restraining Order and Postponing Foreclosure Sales."
24 (Docket No. 13.) This notice purported to give notice to Aurora of a potential class
25 claimant whose foreclosure sale should be postponed. "Said identification" of this
26 potential class claimant was purportedly made in Exhibit A to this second notice.
27 However, Notice 2 as filed with the Court did not have an Exhibit A **and thus**
28 **provided no notice as to which borrower's sale should be postponed. Nor did**

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**Notice 2 state that the potential borrower qualified for, but was rejected a HAMP loan modification.**

21. Notice 2 also purported to give Aurora and Deutsche Bank notice of a potential class claimant who is currently suing Aurora in a separate lawsuit titled *Otis Banks v Lehman Brothers et al.*, Los Angeles Superior Court, Case number BC449939. While confusing, Notice 2 appears to be utilizing the temporary restraining order that was filed in the *Otis* case, stating that the Stipulation serves to protect that plaintiff from foreclosure "if that temporary restraining order in state court is later absolved/extinguished." There is no foreclosure sale set for the plaintiff in that case because there is a temporary restraining order in place, so there is no sale to postpone.

22. Counsel for plaintiffs did not talk with me, nor anyone from my firm, on the phone before filing Notice 2 with the Court, as we agreed she would for purposes of proper notice. Rather, plaintiffs' counsel e-mailed me a vague request, stating that the purported sales of said properties "belong[ed] to the plaintiffs' class members" and that the foreclosures should be postponed. Attached as **Exhibit 3** is a true and correct copy of this e-mail. Nowhere in the e-mail does plaintiffs' counsel articulate the basis for the requested postponement, or whether these potential claimants qualified for but were denied a HAMP loan modification. Said e-mail merely attached a foreclosure notice for borrower Carmen Arballo.

23. In response to plaintiffs' Notice 2, I wrote an e-mail to plaintiffs' counsel on January 15, 2011, confirming receipt of the e-mail, but asking her to call me on Tuesday morning, January 18 (the date of the Arballo foreclosure sale) to discuss her request. Specifically, I told her in the e-mail that "I cannot guarantee these sales can be postponed on such short notice on a holiday weekend, or that the borrowers' situation will warrant a postponement." I also put plaintiffs' counsel on notice of the fact that Notice 2 and her e-mail were "not proper notice under the Stipulation." Attached as **Exhibit 4** is a true and correct copy of this correspondence.

24. On January 15, 2011, plaintiffs' counsel acknowledged receipt of my January 15 e-mail but "disagreed" that notice was improper. Plantiffs' counsel also stated in this e-mail that she "look[ed] forward to speaking to [me] on Tuesday." (*See* Exhibit 4.) Contrary to plaintiffs' counsel's assertions, she never told me she would be on vacation during this time and unavailable to talk.

25. Sensing some misunderstanding on the definition of "proper notice," I wrote a letter to opposing counsel on January 17, 2011, setting forth my client's position as to plaintiffs' "notices" and why they did not constitute proper notice under the Stipulation. Attached as **Exhibit 5** is a true and correct copy of this correspondence. In particular, I explained that plaintiffs' counsel would have to discuss with me the new potential claimants' HAMP allegations, among other things, before defendants would agree to postpone said sale. This letter also set out a favorable HAMP trial plan offer for the Yaus.

26. Counsel for plaintiffs never called me to discuss the postponement of Ms. Arballo's foreclosure sale, as I had requested, and as she had suggested she would. Instead, plaintiffs' counsel e-mailed me a response to my January 17 letter. Attached as **Exhibit 6** is a true and correct copy of that e-mail. The tone of the letter was very aggressive, and plaintiffs' counsel insisted that there was a disagreement as to what "proper notice" was, despite my conversations with her. Notably, this e-mail provided no notice of how the requested postponements of foreclosure sales in Notice 2 related to HAMP violations. Plaintiffs' counsel insisted in the e-mail that it was sufficient for her to add potential class claimants and have foreclosure sales postponed by merely providing me with the name of the borrower. In essence, it was plaintiffs' counsel's position that she could have foreclosure sales postponed at her whim, by merely asking for the postponement, without regard to whether the potential claimant had requested or qualified for a HAMP modification. According to plaintiffs' counsel, there was no qualification for enjoining a sale. This "understanding" is clearly contrary to the Stipulation and the spirit of the parties' agreement.

27. On January 17, 2011, plaintiffs filed a purported "Notice No. 3, Identifying Potential Members of the Class to Be Included in the Stipulation and Order Continuing the Ex Parte Hearing For Restraining Order and Postponing Foreclosure Sales." (Docket No. 14.) Notice 3 purported to give notice of potential class claimants John Frank Baragas and Gloria Baragas, of 4633 Sweet William Court, Salida, CA 95368, and sought to postpone a foreclosure sale that had already occurred. **Notice 3 did not give any indication as to whether the Baragas qualified for, but were rejected a HAMP loan modification.**

28. Counsel for plaintiffs did not talk with me, nor anyone at my firm, on the phone before filing Notice 3 with the Court, as we agreed she would for purposes of proper notice. Rather, plaintiffs' counsel e-mailed me a vague request, stating that this request "was a bit different" because there was no record of Notice of Trustee Sale for this property, only a "3 Day Notice to Quit." Attached as **Exhibit 7** is a true and correct copy of this e-mail. The "notice" appeared to be asking Aurora to postpone a sale that had already occurred, which was not possible. Nowhere in the e-mail does plaintiffs' counsel articulate the basis for the requested postponement, particularly in light of the fact that a sale had already occurred.

29. On January 18, 2011, when it was clear plaintiffs' counsel was purposefully ignoring the parties Stipulation, the spirit of that agreement and my attempts to discuss this matter on the phone, defendants filed a Notice of Motion And Motion Strike Notices 1, 2, And 3 (Docket Nos. 12-14).

30. Also on January 18, 2011, plaintiffs' counsel notified my office via e-mail that it would be moving *ex parte* for an immediate TRO, and to stop the recording of the deed of sale on the Arballo property. The notice specifically informed my office that the *ex parte* papers would be filed "with the Court on Thursday, January 20, 2011" and that we would have "24 hours" to respond. Attached as **Exhibit 8** is a true and correct copy of that e-mail.

31. In addition, the Court should note that plaintiffs' counsel gave notice of her intent to dissolve the Stipulation. My colleague, Justin Balser, responded to her January 18, 2011 e-mail, informing her that defendants were in agreement that the Stipulation should be dissolved, because of the "misunderstanding" about what constituted "proper notice." Attached as part of **Exhibit 8** is that response e-mail.

32. In that same e-mail, Mr. Balser invited plaintiffs' counsel to engage in a meaningful meet and confer process so as not to burden the Court with additional filings. Plaintiffs' counsel never called my office, and failed to otherwise make **any effort** to orally discuss this matter or her intentions on bringing another *ex parte* application.

33. Plaintiffs' counsel never called to discuss her proposed *ex parte* papers. Instead, on January 19, 2011, at 4:30 p.m. P.T., plaintiffs' counsel faxed to my office a copy of plaintiffs' "Ex Parte Application for Temporary Restraining Order as To Rescission of Sale of Carmen Arballos Property or In The Alternative Motion Shortening Time Thereon; Expedited Discovery and Order To Show Cause Why This Court Should Not Issue A Preliminary Injunction And Find Defendants, and Quality Loan Services In Contempt and Yau Modification Extension of Time." (**TRO/OSC Request**).

34. Also on January 19, 2011, at 4:27 p.m. P.T., **before said fax finished transmitting**, plaintiffs filed with the Court the TRO/OSC Request.

35. Contrary to plaintiffs' assertions in the January 18, 2011 e-mail, plaintiffs did not file the TRO/OSC Request on January 20, but rather filed it a day earlier, giving defendants no opportunity to respond, as she was required to do under the Court's twenty-four hour notice rule.

36. At 7:30 p.m. P.T., **three hours after the TRO/OSC Request was filed**, the Court granted TRO/OSC Request. (Docket No. 20.) The TRO/OSC issued by the Court purports to enjoin **all foreclosure sales in California**, **regardless of whether the borrowers allege HAMP violations**. Defendants were given no time to respond to

the TRO/OSC Request, despite the fact that the order stands to immediately and irreparably harm defendants' business.

37. The TRO/OSC Request is replete with plaintiffs' counsel's misrepresentations of the parties' agreement and her efforts to provide "proper notice" to defendants.

38. For example, plaintiffs' counsel suggests in her TRO/OSC Request that she informed me of Ms. Arballos' alleged HAMP violation for purposes of proper notice. She did no such thing. I first learned of Ms. Arballos' alleged HAMP violations when I read plaintiffs' *ex parte* papers.

39. As another example, plaintiffs' counsel alleges in the TRO/OSC Request that defendants moved to strike the "notice" of Ms. Arballo's foreclosure, but it did no such thing. The Motion to Strike stated notice as to the property of John Frank Baragas and Gloria Baragas was improper because, as conceded by plaintiffs' counsel the sale had already taken place, so it could not be enjoined.

40. Also, contrary to plaintiffs' counsel assertions, I explicitly told counsel for plaintiffs, after her request for clarification regarding the phrase "proper notice," that the phrase included *ex parte* notification with the Court because doing so would provide Aurora with a basis to postpone the sale, should the Court issue an order after Aurora had an opportunity to respond to the *ex parte* application.

41. I also explained to plaintiffs' counsel that proper notice would also require her to call me to discuss why the potential class claimant was part of the class and thus entitled to a postponement. However, as stated above, when I sought to revise the Stipulation to reflect this understanding, counsel for plaintiffs refused to engage in further discussion and revision of the Stipulation because she was on vacation and had "had enough."

42. Opposing counsel in her TRO/OSC Request also misrepresented the fact that she "told defense counsel" she was on a long weekend vacation … and unavailable to communicate after 9AM PST" the day Arballo's property was sold. (TRO/OSC

1  Request at 4:1-3 & fn. 1.) In fact, plaintiffs' counsel had agreed to call me that day to
2  discuss the basis for making Ms. Arballo a member of the class—she did not.

3        43.    Plaintiffs' counsel also alleges defendants have "refused to enter into any
4  settlement negotiations." This is a misrepresentation to the Court. Contrary to her
5  assertions, Aurora offered named plaintiffs a HAMP trial plan, which plaintiffs'
6  counsel acknowledged and sought clarification for. If plaintiffs accept the HAMP trial
7  plan, this case will be resolved.

8        44.    On Saturday, January 22, 2011 at 9:45 p.m., plaintiffs' counsel emailed
9  and faxed to my office a 22-page list of over 200 individuals, identifying the names and
10 addresses of what she alleged to be "potential class members to be protected under the
11 stipulation." Attached as **Exhibit 9** is a true and correct copy of the email and attached
12 said notice. The list does not suggest any of the named properties are in foreclosure, or
13 whether plaintiffs' counsel actually represents the borrowers so that Aurora can take
14 direction from counsel on their behalf. Moreover, based on the list, it appears that
15 Aurora does not even have the authority to postpone the purported sales—most of the
16 properties do not concern a loan which Aurora is servicing. Aurora cannot enjoin
17 foreclosure sales on properties for which it does not service a loan. Further, Deutsche
18 bank was named in this action solely based on the fact that it is merely the trustee of
19 the one securitization that owns the loan of named plaintiffs Eddie and Gloria Yau.
20 Deutsche Bank is a trustee for numerous other securitizations and respective loans,
21 loans that are not serviced by Aurora nor involve Aurora.

22       45.    I informed plaintiffs' counsel via email that this notice was improper and
23 that we needed to discuss the notice before any sale could be postponed. Attached as
24 **Exhibit 9** is a true and correct copy of that email. Plaintiffs' counsel refused to talk
25 about it, and instead insisted that her notice was proper. Also attached as **Exhibit 9** is a
26 copy of the email wherein plaintiffs' counsel insisted said notice was proper.

1   I declare under penalty of perjury under the laws of the State of California and the
2   United States of America that the foregoing is true and correct.
3   Executed this 24th day of January, 2011 in Denver, Colorado.

*/s/ Victoria Edwards*
Victoria E. Edwards